**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**RON MEGASON, on behalf of himself and**
**others similarly situated,**

               **Plaintiff,**

    **v.**

**STARJEM RESTAURANT CORP. d/b/a**
**FRESCO BY SCOTTO,**

               **Defendant.**
---------------------------------------------------------x

                           **12-CV-1299 (NRB)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR CLASS CERTIFICATION**

**JOSEPH & KIRSCHENBAUM LLP**

Douglas Weiner
Matthew Kadushin
233 Broadway, 5th Floor
New York, NY 10279
Telephone: (212) 688-5640

## TABLE OF CONTENTS

TABLE OF
AUTHORITIES.................................................................................................…….... i

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  BACKGROUND......................................................................................................... 2

    A.  *Gilliam v. Starjem Rest. Corp.*.......................................................................... 2

    B.  Defendant's Mandatory Tip Pool is Illegal Because it Includes Managers ...... 3

        1.  Defendant Required Servers to Share Tips with Managers in
        Violation of the  NYLL ............................................................................ 4

    C.  Cooks, Dishwashers and other Non-Managerial Employees Who Do Not
        Perform Customer Service During Their Shift May Not Be Paid in Tips
        from the Tip-Pool ...................................................................................... 7

        1. Defendant Required Servers to Share Their Tips with Ineligible
        Employees .................................................................................................. 8

            a. Stockers.................................................................................................. 8

            b. Expediters .............................................................................................. 10

    D.  Spread of Hours................................................................................................. 11

III.  ARGUMENT.............................................................................................................. 11

    A.  Plaintiffs Satisfy The Requirements For Class Certification Under
        Fed. R. Civ. P. 23 ................................................................................................ 11

    B.  Plaintiffs Satisfy The Requirements of Rule 23(a) ........................................... 13

        1. Numerosity – Rule 23(a)(1) ...................................................................... 13

        2. Commonality – Rule 23(a)(2)...................................................................... 13

        3. Typicality – Rule 23(a)(3) .......................................................................... 15

        4. Adequacy – Rule 23(a)(4) .......................................................................... 17

        5. Rule 23(a)'s implied ascertainability requirement ..................................... 17

    C.  Class Certification Under Rule 23(b)(3) is Appropriate.................................... 18

**1. Common questions of law and fact predominate** ........................................... **18**

**2. A class action is superior to other methods of adjudication** ...................... **20**

**D.  Plaintiffs' Counsel Should be Appointed as Class Counsel** ............................ **21**

**E.   The Proposed Notice Is Fair And Adequate And Satisfies The Requirements Of Rule 23(C)(2)(B)** ................................................................................................. **22**

**F.  Discovery Of Class Members' Contact Information Is Proper And Necessary** ................................................................................................................... **22**

**CONCLUSION** ........................................................................................................... **23**

# TABLE OF AUTHORITIES

## Cases

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. May 24, 2001) ............... 14

*Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (PKC),
2011 U.S. Dist. LEXIS 60882 (S.D.N.Y. June 1, 2011) ................................................ 12

*Ash v. Sambodromo*, 676 F. Supp. 2d 1360 (S.D. Fla. 2009) ........................................ 8

*Barenboim v. Starbucks Corp.* ........................................................................... 4, 7

*Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98 (E.D. Tenn. 1979) ...................................... 10

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)................................................................. 18

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ...................................... 16

*Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL),
2006 U.S. Dist. LEXIS 15780 ........................................................................... 3

*Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002).................... 4

*Comcast Corporation v. Behrend*, U.S., 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).................. 18

*Cuzco v. Orion Builders, Inc.*, No. 06 Civ. 2789, 2010 U.S. Dist. LEXIS 51622
(S.D.N.Y. May 26, 2010) ............................................................................... 11

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)……………………….........16

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001).................................................. 14

*Driver v. Appleillinois*, LLC, No. 06-6149, 2012 U.S. Dist. LEXIS 121332 (N.D. Ill. Aug. 27,
2012) ........................................................................................................ 10

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003)........................................... 17

*Elkins v. Showcase, Inc.*, 237 Kan. 720  (Kan. 1985) .................................................. 10

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012)................................................... 12

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .......................................... 14, 20

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011)..... 13, 15, 19

*Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056 (JSR), 2011 U.S. Dist. LEXIS 115833
(S.D.N.Y. Oct. 3, 2011) ........................................................................... *passim*

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009) .................................................. 12

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) .............................. 17

*Heng Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048,
   2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 30, 2006) .................................................. 3

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).............. 14, 16, 18, 19

*In re Diamond Foods, Inc.*, No. C 11-05386 (WHA),
   2013 U.S. Dist. LEXIS 64464 (N.D. Cal. May 6, 2013) .................................................... 18

*In re Initial Pub. Offerings Sec. litig.*, 471 F.3d 24 (2d Cir. 2006).................................................. 12

*In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996)......................... 18

*In Re Visa Check/Mastercard Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001) ................. 18, 20

*Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO),
   2013 U.S. Dist. LEXIS 38675 (S.D.N.Y. Mar. 20, 2013) ......................................... 13, 15

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................................... 17

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ....................................................... 12, 13 15

*Marshall v. Krystal Co.*, 467 F. Supp. 9 (E.D.Tenn. 1978) ........................................................ 10

*Myers v. Copper Cellar Corp.*, 192 F. 3d 546 (6th Cir. 1999) ....................................................... 11

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)................................................................ 12, 21

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897,
   2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. March 30, 2007) ............................................ 21

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)................................................. 21

*Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714 (W.D. Tex. 2010) ....................................... 11

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC),
   2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012)................................................. 21

*Ramos v. Simplexgrinnell LP*, 796 F. Supp. 2d 346 (E.D.N.Y. 2011)......................................... 19

*Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) ............................................... 22

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)....................................................................... 15

*Rosario v. Valentine Ave. Disc. Store, Co.,* 10 CV 5255 (ERK) (LB), 2013 U.S. Dist. LEXIS
   77183 (E.D.N.Y. May 31, 2013) ........................................................................... 15, 20

*Rousell v. Brinker Int'l, Inc.*, H-05-3733,
  2008 U.S. Dist. LEXIS 52568 (S.D. Tex. July 9, 2009)....................................................8

*Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001) ...................................10

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011).........................*passim*

*Shajan v. Barolo*, No. 10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2,
  2010) .......................................................................................................................23

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC),
  2013 U.S. Dist. LEXIS 36357, 113-114 (S.D.N.Y. Mar. 15, 2013)................................22

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ...................................*passim*

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) ....................................18

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008).......................................................................................12

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC),
  2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006).........................................12, 21

*Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS),
  2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)………………………… ... ………21

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698 (SAS),
  2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005) ....................................20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .............................................13

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011)…13, 15, 19, 23

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635,
  2011 U.S. Dist. LEXIS 55771 ...................................................................................11

*Williams v. Macon County Greyhound Park*, Inc., No. NO. 3:10-CV-191-WKW,
  2013 U.S. Dist. LEXIS 45355 (M.D. Ala. Mar. 29, 2013).............................................19

*Young v. Sea Horse Venture IV, LLC*, No. 07 Civ. 1818,
  2009 U.S. Dist. LEXIS 56957 (N.D. Tex. Feb. 9, 2009)....................................................9

**Statutes, Rules, and Regulations**

29 U.S.C. § 203(m) ................................................................................................ 8, 9

Fed. R. Civ. P. 23 ................................................................................... *passim*

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 ...................................... 11

N.Y. Code Comps. R. & Regs. tit. 12, § 137-1.7 ....................................... 11

N.Y. Lab. L. § 196-d ............................................................................... *passim*

Plaintiff Ron Megason and opt-in Plaintiffs Marco Barrara, Claudia Rodriguez and Ann Zadoff ("Plaintiffs") submit this memorandum in support of their motion for class certification of their New York state wage and hour claims pursuant to Fed. R. Civ. P. 23.

## I.  <u>PRELIMINARY STATEMENT</u>[1]

Plaintiffs bring this action on behalf of all servers (waiters and waitresses) of Defendant Starjem Restaurant Corp., d/b/a Fresco by Scotto ("Defendant" or "Fresco" or the "Restaurant"). Plaintiffs allege that in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York wage laws ("NYLL"), Defendant imposed (1) a "tip pool" policy of unlawfully diverting servers' tips to Defendant's managers and kitchen (non-service) employees; and (2) a "spread of hours practice" of not paying the required "spread of hours" compensation whenever a server worked more than ten hours in a workday.

The Class is limited to servers who worked for Defendant since February 21, 2006. Plaintiffs also respectfully request that their counsel be appointed as class counsel under Rule 23(g).

The Rule 23(a) prerequisites are handily met because (1) the proposed class has significantly more than forty members, (2) the claims involve the Restaurant's mandatory tip pool policies and "spread of hours practice," which all servers were subject to at all times of their

---

[1]   In support of their motion, Plaintiffs submit the following:  Declaration of Ron Megason, June 21, 2013 ("Megason Decl."); Declaration of Marco Barrera, dated June 24, 2013 ("Barrera Decl."); Declaration of Robert Broderick, dated June 20, 2013 ("Broderick Decl."); Declaration of Marci Koltonuk, dated June 13, 2013 ("Koltonuk Decl."); Declaration of Kathleen Perry, dated June 20, 2013 ("Perry Decl."); Declaration of Claudia Rodriguez, dated May 28, 2013 ("Rodriguez Decl."); Declaration of Ann Zadoff, dated June 20, 2013 ("Zadoff Decl."); and Declaration of Douglas Weiner, dated June 26, 2013 ("Weiner Decl."), attaching as Exhibit A, a proposed form of notice for the Rule 23 class; attaching as Exhibit B, Excerpts from the Fed. R. Civ. P. 30(b)(6) Deposition of Anthony Scotto ("Scotto Dep."); attaching as Exhibit C, Excerpts from the Deposition of Attilio Vosilla ("Vosilla Dep."); attaching as Exhibit D, Excerpts from the Deposition of Brent Drill ("Brill Dep."); attaching as Exhibit E is a copy of Defendant's Employee Handbook and attaching as Exhibit F is a true and accurate copy of the June 26, 2013 New Court of Appeals decision *Barenboim v. Starbucks Corp.*

employment, (3) Plaintiffs' claims and circumstances are the same as the absent class members they seek to represent – all have been injured by the same wage and gratuity violations of the Restaurant's tip pool, and all will benefit from the relief sought – and (4) Plaintiffs and their counsel will vigorously prosecute this action.

Rule 23(b)(3) is appropriately applied because the common factual and legal issues predominate. Further, a class action is superior to requiring that putative class members pursue individual actions.

## II. <u>BACKGROUND</u>

### A. *Gilliam v. Starjem Rest. Corp.*

This lawsuit is not the first accusing the Defendant of unlawfully violating the FLSA and NYLL. In *Gilliam v. Starjem Rest. Corp.*, two servers brought claims on behalf of servers, bussers, runners, and bartenders. Gilliam alleged, *inter alia*, that Fresco (1) illegally required employees to share tips with managers and non-service employees, (2) improperly took the tip credit for tipped employees , and (3) paid employees a set amount per shift, regardless of hours worked, which amounted to less the minimum wage for all hours worked. *See Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056 (JSR), 2011 U.S. Dist. LEXIS 115833 (S.D.N.Y. Oct. 3, 2011).

Denying the defendant's motion for summary judgment, Judge Rakoff ruled that the plaintiffs had presented evidence that Fresco illegally required tipped employees to share their tips with managers (Attilio Vosilla and Brent Drill) and non-service employees (stockers and expediters). *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *13-15.

The *Gillian* Court denied the plaintiffs' motions for collective and class certification for reasons that are not applicable to this case. Specifically, the *Gilliam* Court found individualized

inquiries were necessary to ascertain whether Defendant's shift-pay policy resulted in minimum wage violations (*Id.* at *19) and that the interests of servers in the tip pool could conflict with the interests of runners and bussers. *Id.* at *19-20. The *Gilliam* Court also found that servers might not adequately represent a class that included runners and bussers, and thus the plaintiffs' motion for class certification was denied.

In contrast to the *Gillian* case, the proposed class in this case is limited to servers, and does not include busboys, runners or any other occupation or classification of employee. Therefore, Plaintiffs in this case do not have any conflict with putative class members. Further, Plaintiffs are not bringing a claim based upon Defendant's shift-pay policy. Accordingly, neither of the two objections to class certification cited by the *Gillian* court are present in this case.

### B. Defendant's Mandatory Tip Pool is Illegal Because it Includes Managers

"Under New York Labor Law § 196-d, an 'employer or his agent' may not demand or accept, directly or indirectly, any part of the gratuities received by an employee." *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *16 (*quoting* NYLL § 196-d.) Whenever an employer or a manager receives tips from a tip pool, it is a violation of law, regardless of whether a manager also serves customers. *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *13-14; *Heng Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780 at *59 (S.D.N.Y. Mar. 30, 2006) ("Chan I"). *See also Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011) ("New York law [] prohibits employers from requiring tipped employees to share tips with non-service employees or managers.").

On June 26, 2013, the New York Court of Appeals drew a bright line standard which is significantly *lower* than the one that Judge Rakoff applied in *Gillian* for determining whether supervisory employees were ineligible to receive money from an employers' mandatory tip pool:

We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or *participate in the process of hiring or terminating employees*, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation … *Meaningful authority, not final authority, should be the standard.*

In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.[2]

*Barenboim v. Starbucks Corp* at *13-14. "Moreover, the control exercised by an individual over employees need not be absolute and continuous to warrant a finding that the individual should be held liable for violating the statute as an employer." *Chu Chung v. New Silver Palace Rest*., 246 F. Supp. 2d 220, 227 (S.D.N.Y. 2002)  "Control may be restricted, or exercised only occasionally, without removing the employment relationship … since such limitations on control 'do[] not diminish the significance of its existence." *Id.* (citation omitted)

### 1.   Defendant Required Servers to Share Tips with Managers in Violation of the NYLL.

The *Gillian* court determined that there was evidence that Attilio Vosilla and Brent Drill were the Restaurant's managers who unlawfully took tips from servers via the Restaurant's mandatory tip pool. *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *13.  The Court found that the

---

[2]   Under Judge Rakoff's standard in *Gillian*, a supervisory employee needed actual authority to hire and fire and as opposed to "participating" in the hiring and firing process. *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *11-12 ("(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.")(internal quotation omitted).   Indeed, Defendant's entire argument in *Gillian* was based upon the fact that managers did not have ultimate authority to hire and fire but merely participated in the process.

plaintiffs had presented evidence that "Vosilla and Drill handle employee scheduling, are involved in the creation and maintenance of employment records, and have the [actual] authority to discipline, hire, fire, and interview tipped employees." *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *12-13.

The Restaurant required servers to share their tips with managers Attilio Vosilla and Brent Drill.  Defendant's witnesses have testified that Attilio Vosilla is the Restaurant's General Manager and that Brent Drill is the other manager. Defendant admits in its company handbook that Brent Drill and Attilio Vosilla are the Restaurants' managers.[3]  Further, the facts clearly show that Mr. Drill and Mr. Vosilla exercised managerial duties and authority.

Manager Drill interviewed and hired employees, including opt-in Plaintiffs Claudia Rodriguez and Marco Barrera.[4]  Manager Drill interviewed and hired Plaintiffs Rodriguez and Barrera.[5]  After their hire, Mr. Drill trained new employees,[6] supervised and directed employees on the floor, and disciplined employees when they acted improperly.[7]  Further, Manager Drill exercised his authority to terminate employees and was observed sending employees home and telling them they were fired.[8]  At the end of every lunch shift Mr. Drill required employees to

---

[3]    *See* Scotto Dep. 30:12-13; Vosilla Dep. 15:8-13; Weiner Decl., Ex. E at  2.

[4]    Megason Decl. ¶¶ 24-25; Barrera Decl. ¶¶ 25-27, 29; Broderick Decl. ¶ 26; Koltonuk Decl. ¶ 23; Perry Decl. ¶ 26; Rodriguez Decl. ¶¶ 23-25, 27; Zadoff Decl. ¶ 25. *See also* Drill Dep. 49:6-51:11.

[5]    Barrera Decl. ¶¶ 25-27; Rodriguez Decl. ¶¶ 23-25.

[6]    Megason Decl. ¶ 27; Barrera Decl. ¶ 33; Broderick Decl. ¶ 28; Koltonuk Decl. ¶ 25; Perry Decl. ¶ 27; Rodriguez Decl. ¶ 32; Zadoff Decl. ¶ 26. Drill Dep. 52:11-13, 70:25-71:13.

[7]    Megason Decl. ¶ 23; Barrera Decl. ¶ 31; Broderick Decl. ¶ 25; Koltonuk Decl. ¶ 24; Perry Decl. ¶ 25; Rodriguez Decl. ¶ 29; Zadoff Decl. ¶ 24.  Drill Dep. 11:6-9, 12:13-21; Scotto Dep. 76:6-25.

[8]    Megason Decl. ¶ 26; Barrera Decl. ¶¶ 30, 32; Broderick Decl. ¶ 27; Rodriguez Decl. ¶ 28.

"cash-out" prior to leaving.[9]  Indeed, servers were not permitted to leave until they had received Mr. Drill's approval.[10]   Mr. Drill exercised his authority to make changes to employees' schedules,[11] conduct pre-shift meetings, deal with customer complaints, and -- unlike servers -- void items.[12] The Restaurant provided keys to Mr. Drill, and on Monday evenings – when he was the Restaurant's sole manager on duty – he secured the Restaurant's revenue and locked the Restaurant's doors at close.[13]  Defendant admitted that Mr. Drill had authority over the service for the entire restaurant.[14]

Attilio Vosilla was the General Manager of the restaurant who regularly assumed complete control of the restaurant.[15]  Vosilla interviewed and hired employees, supervised and directed employees on the floor, disciplined and terminated employees for violation of the Restaurant's policies.[16]   He was in charge of the Restaurant's employee scheduling, and

---

[9]  Megason Decl. ¶  31;  Barrera Decl. ¶ 37; Broderick Decl. ¶ 32; Koltonuk Decl. ¶ 29; Perry Decl. ¶ 31; Rodriguez Decl. ¶ 42; Zadoff Decl. ¶ 30. Scotto Dep. 101:20-103:4; Drill Dep. 30:3-5.

[10]  Megason Decl. ¶ 31; Barrera Decl. ¶ 37; Broderick Decl. ¶ 32; Koltonuk Decl. ¶ 29; Perry Decl. ¶ 31; Rodriguez Decl. ¶ 42; Zadoff Decl. ¶ 30.

[11]  Megason Decl. ¶ 23; Barrera Decl. ¶ 31; Broderick Decl. ¶ 25; Koltonuk Decl. ¶ 24; Perry Decl. ¶ 25; Rodriguez Decl. ¶ 29; Zadoff Decl. ¶ 24.  Scotto Dep. 57:19-22.

[12]  Megason Decl. ¶¶ 28-29; Barrera Decl. ¶ 34-35; Broderick Decl. ¶¶ 29-30; Koltonuk Decl. ¶¶ 26-27; Perry Decl. ¶¶ 28-29; Rodriguez Decl. ¶¶ 31, 33; Zadoff Decl. ¶¶ 27-28.  Scotto Dep. 26:15-18, 162:3-7, 180:25:-181:2; Drill Dep. 15:12-18.

[13]  Megason Decl. ¶ 32; Barrera Decl. ¶ 38; Broderick Decl. ¶ 23; Koltonuk Decl. ¶ 30; Perry Decl. ¶ 32; Rodriguez Decl. ¶ 35; Zadoff Decl. ¶ 31.

[14]  Scotto Dep. 188:14-15 ("Brent is in charge of the service for the entire restaurant.").  *See also* Scotto Dep. 134:10-11 ("Brent is in charge of the entire restaurant, not just the VIP section.")

[15]  *See* Scotto Dep. 31:6-13; 93:7-94:2 (testifying that when Mr. Vosilla is working and owner Anthony Scotto is not present, Mr. Vosilla assumes complete control of the restaurant.)

[16]  Megason Decl. ¶ 34; Barrera Decl. ¶ 40; Broderick Decl. ¶ 35; Koltonuk Decl. ¶ 32; Perry Decl. ¶ 34; Rodriguez Decl. ¶ 37; Zadoff Decl. ¶ 32. Vosilla Dep. 15:14-19, 17:10-11, 55:16-20, 57:10-58:25, 60:3-24; Scotto Dep. 36:21-23, 37:23-39:3.

supervised employees' performance of their end-of-dinner-shift duties and "cash-out" procedures prior to leaving.[17]  He exercised his authority to send employees home and had the authority to void items on customer checks. [18]  He also provided training to new tipped employees.[19] Mr. Vosilla conducted pre-shift meetings in preparation for the dinner shift and dealt with customer complaints.[20] The Restaurant required servers to get Mr. Vosilla's approval prior to leaving at the end of their dinner shift.[21]

Accordingly, even prior to the decision in *Starbucks*, Judge Rakoff found that there was a sufficient factual record to support a finding that Attilio Vosilla and Brent Drill were tip ineligible as a result of their managerial duties. Today, post *Starbucks*, which clarified that any "meaningful or significant authority" would  render an individual tip ineligible, Mr. Vosilla and Mr. Drill are without question tip ineligible under 196-d.

### C.  Cooks, Dishwashers, Expediters and Other Employees Who Do Not Perform Customer Service May Not Be Paid in Tips from the Tip-Pool.

"By its plain terms, § 196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service ..." *Shahriar*, 659 F.3d at 240; *Barenboim v. Starbucks Corp.*, at *11("[E]mployer mandated tip splitting should be limited to employees, who like waiters and busboys, are ordinary engaged in personal customer

---

[17]  Megason Decl. ¶¶ 34-35; Barrera Decl. ¶ ¶ 40-41; Broderick Decl. ¶¶ 35-36; Koltonuk Decl. ¶¶ 32-33; Perry Decl. ¶¶ 34-35; Rodriguez Decl. ¶¶ 37-38; Zadoff Decl. ¶¶ 32-33. Vosilla Dep. 18:9-20:15, 44:6-8, Scotto Dep. 101:20-103:4.

[18]  Megason Decl. ¶ 36; Barrera Decl. ¶ 42; Broderick Decl. ¶ 37; Koltonuk Decl. ¶ 34; Perry Decl. ¶ 36; Rodriguez Decl. ¶ 39; Zadoff Decl. ¶ 34.

[19]  Vosilla Dep. 60:3-24.

[20]  Megason Decl. ¶ 37; Barrera Decl. ¶ 43; Broderick Decl. ¶ 38; Koltonuk Decl. ¶ 35; Perry Decl. ¶ 37; Rodriguez Decl. ¶ 30; Zadoff Decl. ¶ 35. Vosilla Dep. 36:7-25; Scotto Dep. 31:14-33:14.

[21]  Megason Decl. ¶ 39; Barrera Decl. ¶ 44; Broderick Decl. ¶ 40; Koltonuk Decl. ¶ 37; Perry Decl. ¶ 39; Rodriguez Decl. ¶ 42; Zadoff Decl. ¶ 36.

service[.]"). "In determining whether an individual qualifies as an eligible "tipped employee," courts consider the tasks performed by the individual and the extent of his or her customer interaction." *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *14.[22] *See also Ash v. Sambodromo*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) ("Courts have focused on the amount of customer interaction in determining who is a tipped employee [who customarily and regularly receives tips.]"); *Rousell v. Brinker International, Inc.*,  H-05-3733, 2008 U.S. Dist. LEXIS,  at *44 (S.D. Tex. July 9, 2009) ("Where employees perform some duties that entail customer service and others that do not, the employees' level of direct customer interaction is critical to a determination of whether the employee may participate in a mandatory tip pooling arrangement.").

### 1.  Defendant Required Servers to Share Their Tips with Ineligible Employees

The *Gillian* court there was sufficient evidence that Fresco's stockers and expediters did not provide direct customer service and were improperly included in the tip-pool.  *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *15.   The Court explained that "plaintiffs have adduced evidence indicating that while stockers restock glasses, silverware, and plates, they do not interact with customers [and] that expediters do not provide any direct customer service but merely act as intermediaries between the kitchen and the runner." *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *15.  As in the *Gillian* case, the Restaurant continued to unlawfully pay tips to stockers and expediters until at least January 2013.

### a.  Stockers

---

22   "29 U.S.C. § 203(m) and § 196-d bar the same types of tipping practices, and actions that violate the tip pooling provision of 29 U.S.C. § 203(m) [the FLSA] may also violate § 196-d." *Shahriar*, 659 F.3d at 241.

Defendant assigns an employee to be a stocker for the whole shift, and requires servers to share their tips with stockers.[23] The stockers' job is to polish and restock silverware, glasses, and plates. [24] Fresco's stockers spend the vast majority of their shifts near the dishwasher in the kitchen, wiping/drying and stacking tableware.[25] The remainder of their shift is spent taking the tableware to the stocking stations and restocking the stations.[26] The stockers do not interact with any customers during their shift, and do not perform any direct customer service.[27] Indeed, Defendant admits that they specifically assign individuals whom they do not want to interact with customers to be stockers.[28] Accordingly, stockers are ineligible to receive money from the tip pool. *Gillian,* 2011 U.S. Dist. LEXIS 115833, at *15 (plaintiffs presented evidence that Fresco stockers were non-service employees.) *See also* U.S.D.O.L. Op. Ltr., 1997 DOLWH LEXIS 55, at *2-4 (Nov. 4, 1997) (ruling that an employee whose duties also included (i) washing dishes, (ii) setting up glasses on the restaurant floor, (iii) responding to direct customer requests, and (iv) occasionally bringing things to customers was nevertheless as a nonservice employee, and thus tip ineligible.)[29]; *Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-

---

[23]   Megason Decl. ¶ 8; Barrera Decl. ¶ 9; Broderick Decl. ¶ 9; Koltonuk Decl. ¶ 8; Perry Decl. ¶ 9; Rodriguez Decl. ¶ 10; Zadoff Decl. ¶ 9. Scotto Dep. 142:21-143:3.

[24]   Megason Decl. ¶ 8; Barrera Decl. ¶ 9; Broderick Decl. ¶ 9; Koltonuk Decl. ¶ 8; Perry Decl. ¶ 9; Rodriguez Decl. ¶ 10; Zadoff Decl. ¶ 9.

[25]   Megason Decl. ¶ 9; Barrera Decl. ¶ 10; Broderick Decl. ¶ 10; Koltonuk Decl. ¶ 9; Perry Decl. ¶ 10; Rodriguez Decl. ¶ 11; Zadoff Decl. ¶ 10. Scotto Dep. 145:4-18.

[26]   Megason Decl. ¶  10; Barrera Decl. ¶ 11; Broderick Decl. ¶ 11; Koltonuk Decl. ¶ 10; Perry Decl. ¶ 11; Rodriguez Decl. ¶ 12; Zadoff Decl. ¶ 11.

[27]   Megason Decl. ¶¶ 11-12; Barrera Decl. ¶¶  12-13; Broderick Decl. ¶¶ 12-13; Koltonuk Decl. ¶¶ 11-12; Perry Decl. ¶¶ 12-13; Rodriguez Decl. ¶¶ 13-14; Zadoff Decl. ¶¶ 12-13.

[28]   Scotto Dep. 143:4-13.

9

M, 2009 U.S. Dist. LEXIS 56957, at *2 (N.D. Tex. Feb. 9, 2009) ("Defendant violated 29 U.S.C. § 203(m) by requiring plaintiffs to share their tips with employees engaged in occupations that do not customarily and regularly receive tips, such as kitchen helpers").[30] *Cf. Driver v. Appleillinois, LLC*, No. 06-6149, 2012 U.S. Dist. LEXIS 121332, at *70 n.15 (N.D. Ill. Aug. 27, 2012) (rolling silverware in the kitchen is non-service work).

### b. Expediters

Defendant also assigns an employee to work a whole shift as an expediter, and servers are required to share their tips with the expediter.[31] The expediter works in the kitchen, and his primary duty is to provide assistance to the chef, and act as an intermediary between the kitchen and the runners.[32] While there may have been rare occasions when an expediter ran food to a table, such an event was an anomaly. Customarily and routinely, expediters perform virtually no direct customer service during their shift.[33] Accordingly, the Restaurant unlawfully paid tips to them from the tip pool. *Gillian*, 2011 U.S. Dist. LEXIS 115833, at *15 (plaintiffs presented

---

[29] "Interpretive and opinion letters by the Department of Labor do not per se bind the court. Such materials, however, do constitute a body of experienced and informed judgment and the court will give these materials substantial weight." *Samson v. Apollo Resources, Inc*., 242 F.3d 629, 638 (5th Cir. 2001) (internal quotation omitted)

[30] *See also Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101 (E.D. Tenn. 1979) ("[K]itchen personnel are not employees 'who customarily and regularly receive tips.'"); *Marshall v. Krystal Co.*, 467 F. Supp. 9, 12-14 (E.D.Tenn. 1978) (employer not permitted to share tips with "preparation and kitchen-maintenance personnel"); *Elkins v. Showcase, Inc.*, 237 Kan. 720, 735 (Kan. 1985) (An employee who performs his duties "away from the customers" is a nonservice employee who does not 'customarily and regularly receive tips' under the FLSA.).

[31] Megason Decl. ¶ 15; Barrera Decl. ¶ 16; Broderick Decl. ¶ 16; Koltonuk Decl. ¶ 15; Perry Decl. ¶ 16; Rodriguez Decl. ¶ 15; Zadoff Decl. ¶ 16. Scotto Dep. 147:7-16.

[32] Megason Decl. ¶¶ 16-17; Barrera Decl. ¶¶ 17-18; Broderick Decl. ¶¶ 17-18; Koltonuk Decl. ¶¶ 16-17; Perry Decl. ¶¶ 17-18; Rodriguez Decl. ¶¶ 16-17; Zadoff Decl. ¶¶ 17-18. Scotto Dep. 146:21-23; Drill Dep. 60:10-23.

[33] Megason Decl. ¶ 18; Barrera Decl. ¶ 19; Broderick Decl. ¶ 19; Koltonuk Decl. ¶ 18; Perry Decl. ¶ 19; Rodriguez Decl. ¶18; Zadoff Decl. ¶ 18.

evidence that Fresco expediters were non-service employees.) *See also Wicaksono v. XYZ 48 Corp.*, No. 10-Civ-3635(LAK)(JCF), 2011 U.S. Dist. LEXIS 55771, at *14 (S.D.N.Y. May 2, 2011), *adopted by*, 2011 U.S. Dist. LEXIS 55734 (May 24, 2011) ("individuals who work in a restaurant's kitchen are not 'customarily' tipped employees under the FLSA."); *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 732 (W.D. Tex. 2010) (granting plaintiff summary judgment where tip pool included dishwashers, despite the fact that the dishwashers would "(1) bus tables 'as needed,' (2) have 'run food to tables' in the past; and/or (3) perform barback duties 'sometimes.'").[34]

### D.  Spread of Hours

Plaintiffs and the other tipped employees were also regularly required to work a lunch shift and dinner shift in the same day ("doubles"), during which the time elapsed between the start and end of their workday exceeded 10 hours.[35] However, Plaintiffs and other class members were not paid an hour's pay at the basic New York minimum hourly wage rate, as required by New York's "Spread of Hours" law.[36]

### III.   ARGUMENT

### A.  Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23

---

[34]   *See also Myers v. Copper Cellar Corp.*, 192 F. 3d 546, 550 (6th Cir. 1999) (employees who "performed duties traditionally classified as food preparation or kitchen support work . . . could not be validly categorized as 'tipped employees'").

[35]   Megason Decl. ¶ 41; Barrera Decl. ¶ 46; Broderick Decl. ¶ 42; Koltonuk Decl. ¶ 39; Perry Decl. ¶ 41; Rodriguez Decl. ¶ 44; Zadoff Decl. ¶ 38.

[36]   Megason Decl. ¶ 42; Barrera Decl. ¶ 47; Broderick Decl. ¶ 43; Koltonuk Decl. ¶ 39; Perry Decl. ¶ 42; Rodriguez Decl. ¶ 45; Zadoff Decl. ¶ 39.  Scotto Dep. 112:23-25. *See* N.Y. Comp. Codes R. & Regs., tit 12 §§ 137-1.7, 146-1.6 (As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 was replaced by N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6)  *See also Cuzco v. Orion Builders, Inc.*, No. 06 Civ. 2789, 2010 U.S. Dist. LEXIS 51622, at *12 (S.D.N.Y. May 26, 2010) (granting summary judgment to plaintiffs on spread of hours claim).

Rule 23 provides that certification is appropriate where, as here, Plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008).

"On a motion to certify a class, the court accepts all allegations in the pleadings as true." *Aponte v. Comprehensive Health Mgmt*., No. 10 Civ. 4825 (PKC), 2011 U.S. Dist. LEXIS 60882, at *25 (S.D.N.Y. June 1, 2011) (*citing Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *27 (S.D.N.Y. Sept. 29, 2006).  While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp*., 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*citing In re Initial Pub. Offerings Sec. litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).  "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common*.'" *Id*. (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202. Nevertheless, courts in this Circuit give Rule 23 a "liberal rather than restrictive construction," and "adopt a standard of flexibility when they apply it." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal quotation marks omitted).  Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying

class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citations and internal quotation marks omitted).

### B.  Plaintiffs Satisfy The Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4).

#### 1.  Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), class is so numerous that joinder of all members is impracticable. Numerosity is presumed where a putative class has forty or more members. *Shahriar*, 659 F.3d at 252 (citation omitted).   Here, Defendant does not dispute that the class is significantly greater than forty servers. Therefore, numerosity is satisfied.

#### 2.  Commonality – Rule 23(a)(2)

Rule 23(a)(2)'s commonality requirement is met where a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO), 2013 U.S. Dist. LEXIS 38675, at *17 (S.D.N.Y. Mar. 20, 2013) (*citing Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("A plaintiff may meet his burden as to commonality by showing that the class members' grievances share a common question of law or of fact.") (citations and internal quotation marks omitted).  A single common question of law or fact will suffice. *Marisol A.*, 126 F.3d at 376; *see Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) ("[C]ourts have liberally construed the commonality requirement to mandate a minimum of one

13

issue common to all class members.") (citations omitted); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (stating that commonality is satisfied "if the class shares even one common question of law or fact") (citations omitted).

"[F]actual differences among the claims of the class members will not defeat certification." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. May 24, 2001) (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) ("The claim by each individual need not be identical, however, but there must exist common questions of fact or law.").

Here, the claims of Plaintiffs and the Rule 23 Class Members arise from a common wrong: Defendant's distribution of servers' tips to ineligible employees and Defendant's failure to pay servers "Spread of Hours" pay. The questions of law and fact common to all members of the Rule 23 Classes include:

1) Were the policies, practices and procedures of Defendant's tip-pool uniformly applied to all Class Members;

2) Was Defendant's policy to distribute a portion of tips to General Manager Attillio Vasiviotto, Manager Brent Drill, expediters and stockers unlawful; and

3) Was the Defendant's policy, practice and procedure to not pay "Spread of Hours" premium on days when the interval between the start and end servers workday exceeded 10 hours unlawful?

Commonality of issues with respect to the Rule 23 Classes is evident. *Rosario v. Valentine Ave. Disc. Store, Co.,* 10 CV 5255 (ERK) (LB), 2013 U.S. Dist. LEXIS 77183, at * 17-18 (E.D.N.Y. May 31, 2013)("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.")  The harm that the named Plaintiffs have suffered in this case is the same harm suffered by each and every Class Member.  Once liability is determined each individual Class Members' damages are easily calculated by simply reviewing the Restaurant's payroll records, tip sheets and schedules.  Therefore, in cases such as this where there is a tip pool policy that is uniformly applied to all employees in the exact same manner, Plaintiffs satisfy the commonality requirement. *See, e.g., Shahriar*, 659 F.3d at 252 (commonality satisfied where plaintiffs established that restaurant workers were subject to the same tipping policies).

### 3.  Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Jacob,* 2013 U.S. Dist. LEXIS 38675, at *27 (*quoting Marisol A.*, 126 F.3d at 376) (quotations omitted). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337 (*quoting Marisol A.*, 126 F.3d at 377).  Moreover, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when an employer imposes "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also Whitehorn*, 275 F.R.D. at 199 ("[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they

15

did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled, but do not defeat typicality for Rule 23 purposes.") (citations and internal quotation marks omitted).

Rather, the claims of the named Plaintiffs and the class "only need to share the same essential characteristics, and need not be identical." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 , 158 (S.D.N.Y. 2008) (citation omitted); *see also Garcia*, 281 F.R.D. at 106  (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted); *Spicer*, 269 F.R.D. at 337 ("[T]ypicality does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.") (*quoting Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)); *Iglesias-Mendoza*, 239 F.R.D. at 371 ("As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.") (citations omitted).

In this case, the violations suffered by the Plaintiffs are identical to and therefore typical of the Class of servers they seek to represent. By including ineligible employees in the tip-pool, the Restaurant failed to pay servers all the tips they earned.  *See, e.g., Shahriar*, 659 F.3d at 252 (finding typicality satisfied where "all Class Members were subject to the same tipping policies."); *Spicer*, 269 F.R.D. at 337 (finding commonality and typicality easily satisfied where all class members were subject to the same policies regarding their employers' distribution of a

service charge). Moreover, Defendant also failed to pay all servers a "Spread of Hours" premium when the interval between the start and end of their workday exceeded 10 hours.  As the "Plaintiff[s] and the prospective class were subject to the same general employment scheme", Rule 23(a)(3) is satisfied.  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### 4.  Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253.  Here, the named Plaintiff and Opt-In Plaintiffs Marco Barrara, Claudia Rodriguez and Ann Zadoff, who are prepared to act as class representatives, have no conflict with any Class Members, and will fairly and adequately protect the interests of the Class.  Additionally, since the Plaintiffs were subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### 5.  Rule 23(a)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011).  Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id*. at 396 (*citing Dunnigan v. Metro. Life Ins. Co*., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).  "An identifiable class exists if its members

can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012).   Here, the proposed class is easily identifiable from Defendant's records: it is comprised of all servers who worked at the Restaurant throughout the Class Period.

### C.  Class Certification Under Rule 23(b)(3) is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).   Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

### 1.   Common questions of law and fact predominate

To satisfy predominance under Rule 23(b)(3), Plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *In Re Visa Check/Mastercard Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (citation and internal quotations omitted)).  "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Iglesias-Mendoza*, 239 F.R.D. at 372 (internal quotation omitted).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

Class certification is appropriate under Rule 23(b)(3) where, as here, the parties establish that individualized damages will not  overwhelm common questions and that "damages are susceptible of measurement across the entire class."  *Comcast Corporation v. Behrend*, U.S., 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013).  *See also In re Diamond Foods, Inc*., No. C 11-

05386 (WHA), 2013 U.S. Dist. LEXIS 64464, at *37 (N.D. Cal. May 6, 2013) (granting class certification after the Supreme Court's *Comcast* decision because "plaintiff has sufficiently shown that damages are capable of measurement on a classwide basis such that individual damage calculations do not threaten to overwhelm questions common to the class."); *Williams v. Macon County Greyhound Park*, Inc., No. NO. 3:10-CV-191-WKW, 2013 U.S. Dist. LEXIS 45355, at *23-24 (M.D. Ala. Mar. 29, 2013) ("Plaintiffs also must prove that they lost money and the amount of those losses. Admittedly, the damages calculations will involve some individualized inquiries, as Defendants devote much ink to pointing out, but not to the extent that those inquiries predominate over the common questions with respect to liability. Generally, 'the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.'" (citations omitted).

In fact, "numerous courts have found that wage claims are especially suited to class litigation – perhaps 'the most perfect questions for class treatment' – despite differences in hours worked, wages paid, and wages due." *Ramos v. Simplexgrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) (listing cases) (*quoting Iglesias-Mendoza*, 239 F.R.D. at 373); *see also, e.g., Garcia*, 281 F.R.D. at 108 ("Although individual questions as to damages may exist, common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.") (citation and internal quotation marks omitted) (*citing Whitehorn*, 275 F.R.D. at 200).

Here, as set forth in the discussion of common issues under Rule 23(a)(2), there are common issues of law and fact that predominate over any individualized issues.   Plaintiffs challenge the Restaurant's commonly applied employment policy.  At a single stroke, the answer to the question of whether the Restaurant's policies and tip-pool procedures were lawful

predominate over all individualized inquiries.  The fact that each Class Member's damages may vary is of no import because, as stated above, once liability is determined a calculation of damages entails the application of simple mathematical calculations. *Rosario*, 2013 U.S. Dist. LEXIS 77183, at *33.

### 2.   A class action is superior to other methods of adjudication

Class certification will permit the resolution of significantly more than 40 individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits. When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *Id.*, at *35-36*. See also In re Visa Check*, 280 F.3d at 146.

Courts routinely find superiority where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See e.g., Velez v. Majik Cleaning Serv*., No. 03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709, at *19 (S.D.N.Y. Jan. 18, 2005) (ruling that a class action is superior where individual potential class members claims are small and, as a result, there is little incentive for the putative class members to bring individual suits);  *Torres,* 2006 U.S. Dist. LEXIS 74039, at *53 (finding that a class action was superior to other methods where the amount of recovery was small in relation to litigation costs); *see also Frank*, 228 F.R.D. at 181 ("The small recoveries expected to be received by those individuals renders it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, which would certainly exceed their recoveries manifold.")   Without certification, a host of individuals will lose any practical means for obtaining a meaningful remedy from Defendant's illegal conduct.

In addition, opt-out classes are commonly granted where, as here, class members currently work for the Defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914, at *26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *53-54 (finding that the fact that some class members are currently employed by Defendant further justifies class certification as these individuals would be unlikely to bring a claim against their employer for fear of retaliation).  Therefore, since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class.  *Myers*, 624 F.3d at 547.

### D.  Plaintiffs' Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs that the Court to consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)   counsel's knowledge of the applicable law; and
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).  *See also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004); *Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840, at *38-39 (E.D.N.Y. March 30, 2007), *adopted by*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007).

Plaintiffs have retained counsel who is qualified and experienced in class action law and wage and employment litigation.  Counsel have extensive experience litigating plaintiff class actions as well as New York wage and hour claims, and have repeatedly and successfully

managed large class-action litigations. *See, e.g., Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* No. 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (noting that proposed class counsel "have significant experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law.").[37]   Further, Plaintiffs' counsel has zealously prosecuted this action and identified the potential claims and has sufficient financial resources to represent the class.   The Rule 23(g) requirements are satisfied by the appointment of Plaintiffs' counsel as class counsel.

### E.  The Proposed Notice Is Fair And Adequate And Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as Exhibit A to the Declaration of Douglas Weiner is Plaintiffs' proposed notice which satisfies all the requirements of Rule 23(c)(2)(B).[38]

### F.  Discovery Of Class Members' Contact Information Is Proper And Necessary

Plaintiffs seek a computer-readable list of all names, last known address, alternate address(es) (if any), all known telephone numbers, all known e-mail addresses, social security numbers, dates of employment and job titles for all Class Members, so that Plaintiffs can mail and e-mail the notices to putative class members.  *See, e.g., Spencer v. No Parking Today, Inc.,* No. 12 Civ. 6323 (ALC), 2013 U.S. Dist. LEXIS 36357, 113-114 (S.D.N.Y. Mar. 15, 2013) (ruling that "courts routinely order the disclosure of such information to facilitate distribution of the notice."); *Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) ("[c]ourts

---

[37] *See* Weiner Decl. ¶¶ 16-17**.**

[38] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:

|       |                                                                                          |
|-------|------------------------------------------------------------------------------------------|
| (i)   | the nature of the action;                                                                |
| (ii)  | the definition of the class certified;                                                   |
| (iii) | the class claims, issues, or defenses;                                                   |
| (iv)  | that a class member may enter an appearance through an attorney if the member so desires; |
| (v)   | that the court will exclude from the class any member who requests exclusion;            |
| (vi)  | the time and manner for requesting exclusion; and                                         |
| (vii) | the binding effect of a class judgment on members under Rule 23(c)(3)."                   |

often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (citations omitted).

Plaintiffs seek the social security numbers of covered employees so that Plaintiffs' counsel can perform a skip trace for all notices returned as undeliverable because of a change of address.  Plaintiffs are willing to execute a stipulation of confidentiality regarding the numbers. *See Shajan v. Barolo*, No. 10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010) (requiring defendant to produce social security numbers of putative collective members subject to a confidentiality agreement.); *Spicer*, 269 F.R.D. at 339 (granting Plaintiffs' request to compel disclosure of putative class members' social security numbers.)

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court:

  (1)   Certify this case as a class action;

  (2)   Appoint Plaintiffs' counsel as Class counsel;

  (3)   Order Defendant to produce to Plaintiffs a list, in electronic format, of all persons employed by Defendant as servers from February 2006 to the present, including the employee's name, last known address, alternate address(es) (if any), all known telephone numbers, all known e-mail addresses, social security numbers, dates of employment and job titles, within ten days of the Court's Order; and

  (4)   Authorize the mailing of the proposed notice to all Class Members.

Dated:  New York, New York
        June 26, 2013

Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

/s/ Douglas Weiner_____
Douglas Weiner
Matthew Kadushin
D. Maimon Kirschenbaum
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff, collective action
members and proposed class members*

24