UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RON MEGASON, on behalf of himself
and others similarly situated,

     Plaintiff,

   - against -

STARJEM RESTAURANT CORP. d/b/a
FRESCO BY SCOTTO,

     Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

12 Civ. 1299 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

 Named plaintiff Ron Megason, a server employed by the Manhattan restaurant Fresco by Scotto ("Fresco"), brings this action on behalf of himself and others similarly situated against his employer pursuant to the Fair Labor Standards Act ("FLSA") and New York Law ("NYLL").  Plaintiff alleges that defendant engaged in three distinct, unlawful practices: first, requiring that servers share tips with two allegedly tip-ineligible restaurant managers; second, requiring that servers share tips with two categories of employees whose back-of-house duties allegedly rendered them tip-ineligible as well; and third, illegally withholding the "spread of hours" compensation mandated by New York Labor Law.  In the instant motion, plaintiffs seek certification pursuant to Fed. R. Civ. P. 23 of a class of Fresco servers, and court-approved notice thereto.

For the reasons stated herein, plaintiff's motion is granted in part and denied in part.

## BACKGROUND[1]

### I. Procedural History

Although this action commenced on February 21, 2012 with the filing of plaintiffs' initial complaint, the relevant procedural history began considerably earlier. On August 12, 2010, Fresco waiter Gary Gillian brought a prior suit on behalf of himself and all those similarly situated against Starjem Restaurant Corp. and Fresco owner Marion Scotto for alleged violations of the FLSA and New York law. Pls. Mem. at 2; see also Gillian v. Starjem Rest. Corp., No. 10 Civ. 6056 (JSR) (S.D.N.Y. Aug. 12, 2010), Dkt. 1. Specific allegations in the Gillian suit included claims that Fresco illegally required employees to share tips with managers and non-service employees while improperly taking advantage of the tip credit, and also

---

[1]     The background draws upon the Second Amended Complaint ("Compl."), filed August 19, 2013; Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification, filed June 26, 2013 ("Pls. Mem."); the Declaration of Douglas Weiner, Esq. in Support of Plaintiffs' Motion for Class Certification ("Weiner Decl."), filed June 26, 2013, the exhibits annexed thereto, and the accompanying declarations of seven plaintiffs; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion, filed July 29, 2013 ("Defs. Opp."); the Declaration of Craig R. Benson, Esq. in Opposition to Plaintiffs' Motion ("Benson Decl."), filed July 29, 2013, the exhibits annexed thereto and accompanying declarations; the Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification, filed August 9, 2013 ("Pls. Reply Mem."); the Reply Declaration of Douglas Weiner, Esq. in Further Support of Plaintiffs' Motion for Class Certification, filed August 9, 2013 ("Weiner Reply Decl.") and the exhibit annexed thereto; and also the submissions in Gillian v. Starjem Rest. Corp., No. 10 Civ. 6056 (JSR) and Salinas v. Starjem Rest. Corp., No. 13 Civ. 2992 (AT).

used a set shift pay model that compensated staff at rates below minimum wage.  Id.  Unlike the case sub judice, the proposed class of plaintiffs in Gillian included all tipped Fresco employees, including servers, bussers, runners and bartenders. Pls. Mem. at 2-3.

Plaintiffs to that action then filed motions for FLSA conditional certification and Rule 23 class certification, while defendants moved for partial summary judgment.  Gillian, No. 10 Civ. 6056 (JSR), Dkts. 20, 39, 41.  In an October 4, 2011 decision denying all three motions, Judge Rakoff found, inter alia, that the Gillian plaintiffs had "utterly failed to demonstrate that they are similarly situated to other putative class members with respect to the legality of the tip pool." Gillian, No. 10 Civ. 6056 (JSR), Dkt. 71 at 15.  This was because the proposed Gillian class included runners and bussers, who rotated among themselves the positions of expediters and stockers — the very positions alleged to be tip ineligible.  In other words, the Gillian plaintiffs were "seeking to represent the same group of individuals who they allege were not properly participating in the tip pool."  Id. at 15-16.  Hence, Judge Rakoff held that the interests of proposed class members diverged, for "the named plaintiffs seek relief that may adversely affect some of the individuals they purport to represent."  Id. at 15.  In light of this conflict of interest,

Judge Rakoff held that plaintiffs failed to meet the requirements for Rule 23 class certification (in particular, the adequacy prong) and even failed to meet the lesser standard necessary for FLSA conditional certification. Id. Unsurprisingly, shortly after Judge Rakoff's order, plaintiffs Gary Gillian and two others entered with defendants into a stipulation of dismissal with prejudice. Gillian, No. 10 Civ. 6056 (JSR) (S.D.N.Y. Dec. 23, 2011), Dkt. 72.

Represented by the same counsel as the Gillian plaintiffs, plaintiff server Ron Megason filed suit in this action shortly thereafter, on February 21, 2012. The gravamen of the complaint in this case mirrors that brought by the Gillian plaintiffs — both sets of plaintiffs alleged that Fresco's policy of sharing server tips with Fresco management and tip-ineligible expediters and stockers violated the FLSA and New York Labor Law. Also, as before, plaintiff Megason makes a claim under state law for unlawfully withheld "spread of hours" pay. The case at bar differs from the Gillian case, however, in that plaintiff Megason brings suit only on behalf of Fresco servers, and, unlike Gillian, plaintiff Megason makes no shift-pay claims. Pls. Mem. at 3. Defendant Starjem answered the initial complaint on March 28, 2012. Plaintiff amended his complaint first on September 6, 2012 and subsequently on August 19, 2013, after briefing the instant motion; the operative second amended

4

complaint formally added as a defendant Anthony Scotto, Jr., owner and manager of Fresco. Defendants answered the first and second amended complaints on September 24, 2012 and September 6, 2013, respectively.

By stipulation of September 28, 2012, the parties agreed to incorporate into the record of the instant action the evidentiary record created in the <u>Gillian</u> action, including most documents and deposition testimony. <u>Megason v. Starjem Rest. Corp.</u>, No. 12 Civ. 1299 (NRB) (S.D.N.Y. Sept. 28, 2012), Dkt. 21. The parties also engaged in further discovery through June 17, 2013.

Rather than contest by motion the conditional certification of a class of plaintiffs pursuant to the FLSA, defendants instead consented by stipulation of December 21, 2012 to the issuance of a "Notice of Pendency" regarding the FLSA claims to individuals who worked as Fresco servers between August 11, 2009 and January 8, 2013. Plaintiff's counsel sent the stipulated notice on January 21, 2013, and eighteen former and current servers have filed opt-in forms for the FLSA claims.

This motion for class certification of the New York state law claims pursuant to Rule 23 was filed on June 26, 2013. Defendants opposed on July 29, 2013, and plaintiffs replied on August 9, 2013. Oral argument on this motion was held on December 19, 2013.

At the close of oral argument, the parties revealed for the first time that, unbeknownst to the Court, yet another associated suit has been brought in this District against Fresco.  Oral Argument Transcript ("Tr.") at 53.  In a separate action now pending before Judge Analisa Torres, thirteen present and former Fresco employees employed as busboys and runners filed suit against Starjem Restaurant Corp, Marion Scotto and Anthony Scotto for violations of the FLSA and New York Labor Law.  Salinas v. Starjem Rest. Corp., No. 13 Civ. 2992 (AT) (S.D.N.Y. May 3, 2013), Dkt. 1.  Apparently, in the wake of Judge Rakoff's October 4, 2011 Gillian opinion observing the fundamental conflict of interest between the server plaintiffs and the non-server plaintiffs (i.e., bussers, runners, expediters, and stockers), the two sets of plaintiffs chose to refile their claims in separate actions, with the former group comprising the proposed class in this suit and the latter the proposed class in the Salinas action.[2]  The Salinas plaintiffs brought similar claims to those brought in this case, but the specific facts alleged — particularly with regard to the time spent providing customer service by bussers and runners — differ in material respects from those alleged by Mr. Megason and the

---

[2]     Counsel are reminded for future reference that the Civil Cover Sheet both requires counsel to list any similar case previously filed in this Court and to indicate whether any newly-filed case is potentially related to an earlier-filed case.  The failure of counsel here and in Salinas to do so is especially troublesome, because counsel were surely well aware of the prior actions.

opt-in plaintiffs here.   Filed over a year after Mr. Megason brought his complaint, the <u>Salinas</u> suit is still in the preliminary stages, with a motion for conditional certification pursuant to the FLSA anticipated following the close of testimonial discovery on January 12, 2014.

## II.  Factual Allegations

In the case at bar, plaintiff Ron Megason, the eighteen opt-in plaintiffs, and others in the proposed class work or have worked as servers employed by defendant Starjem Restaurant Corp. and doing business as Fresco by Scotto, an Italian restaurant in midtown Manhattan.   Compl. ¶¶ 4-5, 9, 15.   Individual defendant Anthony Scotto is the owner and manager of Fresco.   Compl. ¶¶ 6-7.   Because plaintiffs constituted "tipped employees" under federal and state law, their employer could and did invoke the statutory "tip credit" provision, permitting employers to pay tipped employees at an hourly wage rate below the minimum wage, provided that the hourly wage and the employees' tips, taken together, are at least equivalent to the minimum wage.[3]   See 29 U.S.C. § 203(m); N.Y. Labor Law § 652(4).

Fresco's wait staff participated in a "tip pool," whereby tips were collected for each shift and redistributed to tip

---

[3]      Under federal law, the minimum required cash wage that an employer can pay a tipped employee is $2.13 per hour, so the maximum tip credit that the employer can claim per employee is $5.12 per hour.   See U.S. DEPT. OF LABOR, WAGE AND HOUR DIVISION FACT SHEET #15.   Under state law, the minimum required cash wage for tipped food service employees is currently $5.00 per hour.   N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3.

eligible employees according to a point-based system, in which one point was assigned to floor and party servers, 0.75 points to runners and expediters, 0.6 points to the coffee man, 0.5 points to the busboys and stockers, and up to 1.5 points to the floor captain. Defs. Opp. at 3-4. The allocation system differed to some extent for shifts involving private parties. For private parties occurring prior to June 2011, Fresco imposed a 20% service charge, 15% of which was apportioned to the party captain on duty, while the remaining 85% was assigned to the tip pool, to be distributed according to the standard point system. Defs. Opp. at 4. For private parties held in June 2011 and thereafter, Fresco imposed a 17% service charge and a separate 3% administrative fee; the former became part of the tip pool in its entirety, while the latter was retained by the party captain.[4] Defs. Opp. at 4-5.

The tip share system was administered by Fresco's servers, who calculated the tip allocations, distributed tips accordingly, and maintained records to be processed by the company bookkeeper. Defs. Opp. at 4. Although management was

---

[4]    Hence, both before and after June 2011, plaintiff employees who worked private party shifts were guaranteed to receive gratuities amounting to 17% of the total bill, which may well have exceeded the compensation they could have expected under a standard system of discretionary tipping alone. The facts here thus differ from many FLSA tip-sharing suits in which plaintiff employees receive less tip compensation than expected by virtue of the improper distribution to tip-ineligible employees. Contra Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 313483, at *14-16 (S.D.N.Y. Feb. 1, 2007) (plaintiff employees retained only three quarters—or 11.25%—of a 15% fixed banquet fee, while the remaining 3.75% was improperly allocated to managers).

not involved in the daily operation of the tip pool, the plaintiffs' declarations uniformly state that the tip pool system predated their employment and operated without the endorsement of the wait staff.[5]  Megason Decl. ¶¶ 3-7; Barrera Decl. ¶¶ 3-8; Broderick Decl. ¶¶ 3-8; Perry Decl. ¶¶ 3-8; Rodriguez Decl. ¶¶ 3-7; Zadoff Decl. ¶¶ 3-8.

During the relevant time period, two alleged managers — Attilio Vosilla and Brent Drill — received certain disputed allocations of gratuities.  It is undisputed that during the relevant time period Attilio Vosilla served as Fresco's manager, though defendants contest the extent to which Mr. Vosilla exercised true managerial control.  Defs. Opp. at 9.  Mr. Vosilla served as Fresco's party captain for certain shifts, in which role he received 15% of the party service charge before June 2011 and the 3% administrative fee after June 2011, as described above.  Vosilla Decl. ¶¶ 5-6.  He did not otherwise participate in the standard tip pool.  Defs. Opp. at 5 n.14.  Unlike Mr. Vosilla, Brent Drill fully participated in the standard tip pool as a matter of course, ostensibly in his role as a floor captain, until January 1, 2013, when he was officially promoted to manager.  Defs. Opp. at 8.  However, plaintiffs have adduced evidence that Mr. Drill in fact

---

[5]    Defendants present contradictory evidence via the declaration of Brent Drill, who testified that the waiters voted on the tip pool's precise point allocation in 2009.  Drill Decl. ¶ 10.

exercised managerial duties well before then, including but not limited to disciplining, training, and participating in the hiring and firing of Fresco employees.   Pls. Mem. at 5-6. Indeed, Fresco's own Employee Reference Guide, updated in October 2007 and on which plaintiff employees presumably had reason to rely, plainly states, "The restaurant managers are Anthony Scotto, Jr., Attilio Vosilla & Brent Drill."   Weiner Decl. Ex. E at 2.

Plaintiffs also complain of the tip pool participation of Fresco stockers and expediters, the nature of whose duties is hotly contested.   The stocker, a position rotated among busboys, spends the bulk of his shift wiping, polishing, and delivering silverware, glassware and plates to stocking stations located in the main dining and party rooms.   Pls. Mem. at 9; Defs. Opp. at 7.   Defendants dispute this characterization, arguing that in many cases the stocker performs extensive customer service, including standard busboy duties.   Defs. Opp. at 7, 11, 14. However, in deposition testimony, defendant Anthony Scotto conceded that the stocker spends approximately half of the lunch shift and approximately three-quarters of the dinner shift restocking tableware, and only a minority of his time delivering food or otherwise interacting with customers.   Scotto Dep., Weiner Decl. Ex. B, at 145-46.   Plaintiffs' declarations also support Mr. Scotto's account of stocker duties and dearth of

customer interaction.   Megason Decl. ¶¶ 8-14; Barrera Decl. ¶¶ 9-15; Broderick Decl. ¶¶ 9-15; Perry Decl. ¶¶ 9-15; Rodriguez Decl. ¶¶ 10-14; Zadoff Decl. ¶¶ 9-15.

The expediter, a position rotated among runners when sporadically needed, acts as an intermediary between the sous chef and the runners, who in turn deliver plated food to restaurant patrons.   Pls. Mem. at 10-11.   Plaintiffs contend that the runner assigned to an expediter role performs virtually no direct customer service and spends most if not all of the shift in the kitchen assisting the sous chef, a description also endorsed by defendant Anthony Scotto.   Pls. Mem. at 10; Scotto Dep., Weiner Decl. Ex. B, at 146-47.   Some contrary testimony suggests that the expediter is more properly considered the "lead runner," as his duties continue to include the delivery of food from the kitchen to customers' tables.   See Defs. Opp. at 5-6.   Defendants submit that, on those occasions where the sous chef misses a shift, a runner will fill in for the sous chef in a pure expediter role, in which case that individual does not participate in the tip pool and instead receives a separate paycheck from Fresco.   Defs. Opp. at 6.   Notably, in the Salinas action brought against Fresco by runners, bussers, expediters and stockers, plaintiffs allege that they spent "over half" of their workdays on tip-ineligible duties, which would tend to support plaintiffs' account in the instant case.   Salinas v.

11

<u>Starjem Rest. Corp.</u>, No. 13, Civ. 2992 (AT) (S.D.N.Y. May 3, 2013), Dkt. 1.

When plaintiffs worked a double shift (i.e., both the lunch and dinner shift for the same day), the time elapsed between the start and end of their workdays exceeded ten hours, triggering the requirement for Fresco to compensate them an additional hour's pay at the basic state minimum wage pursuant to New York's "spread of hours" law. Pls. Mem. at 11; N.Y. Comp. Codes R. & Regs., tit. 12 §§ 137-1.7, 146-1.6. Fresco's Employee Reference Guide notes that, for staff, the lunch shift begins at 10 a.m. and runs until at least 3 p.m. and the dinner shift begins at 4 p.m. and runs until at least 11 p.m., amounting to at least twelve hours at work and at least thirteen hours between start and end of the workday. Weiner Decl. Ex. E. at 2-3. For these shifts, plaintiffs allege that Fresco failed to pay the required "spread of hours" compensation, which, for at least some portion of the relevant time period, defendant Scotto acknowledged. Pls. Mem. at 11; Pls. Reply Mem. at 4, Scotto Dep., Weiner Decl. Ex. B, at 112.

## DISCUSSION

### III. Legal Standards

In order to qualify for certification as a class action, plaintiffs must satisfy the four requirements of Fed. R. Civ. P. 23(a), to wit:

> (1) the class is so numerous that joinder of
> all members is impracticable, (2) there are
> questions of law or fact common to the
> class, (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.

Because plaintiffs bring this motion for class certification under Rule 23(b)(3), they must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A court may only certify a class action if, "after a rigorous analysis," it is satisfied that the Rule 23 requirements have been met. In re Initial Pub. Offerings Sec. Litig. ("In re IPO"), 471 F.3d 24, 33 (2d Cir. 2006) (internal quotation marks omitted). This rigorous analysis must include an evaluation of the merits insofar as they pertain to the Rule 23 factors, an obligation "not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id. at 41. In fact, frequently the analysis "will entail some overlap with the merits of the plaintiff's underlying claim," because a "class determination generally involves considerations that are

enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011) (internal quotation marks omitted).

The plaintiff bears the burden of satisfying by a preponderance of the evidence each Rule 23(a) and 23(b)(3) requirement. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). Because defendants focus their challenge on the commonality and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3), but do not dispute Rule 23(a) numerosity and typicality, we concentrate our analysis on the challenged conditions. To meet the adequacy requirement of Rule 23(a), plaintiffs must demonstrate that "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011). To meet the commonality requirement of Rule 23(a), plaintiffs must show "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart, 131 S. Ct. at 2551 (internal quotation marks omitted).

Rule 23(b)(3) requires more. "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). To

satisfy Rule 23(b)(3), plaintiffs must show that the claims presented can be resolved "through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)(quoting Moore v. PaineWebber, Inc., 306 D.3d 1247, 1252 (2d Cir. 2002)). In a recent decision, the Supreme Court further emphasized that plaintiffs proposing certification of a Rule 23(b)(3) class must "establish[] that damages are capable of measurement on a classwide basis." Comcast, 133 S. Ct. at 1433 (reversing a lower court's certification of a Rule 23(b)(3) class action because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.").

While, to be sure, a class certification motion may require "prob[ing] behind the pleadings," id. at 1432 (quoting Wal-Mart, 131 S. Ct. at 2551), "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing In re IPO, 471 F.3d at 41). Moreover, an order of class certification is "inherently tentative," and "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent

developments in the litigation." Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) (internal quotation marks omitted). The key inquiry at this stage is not a final resolution of liability but rather "whether the constituent issues that bear on [defendant's] ultimate liability are provable in common." Myers, 624 F.3d at 550; see also In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 112, 116 (2d Cir. 2013) (holding that the proposed class action claims were "susceptible to generalized proof such that common issues will predominate over individual issues," even though "[t]he court did not reach the merits whether the [service providers] were shell companies created to perpetrate a fraud"). Even in the wake of the Supreme Court's recent Comcast decision, the Second Circuit held that a class action may be certified if the plaintiffs present a damages model capable of calculating damages on a class-wide basis, notwithstanding the "feasibility-related issue [of] the potential need for manual input" of certain limited information. In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d at 130.

## IV.   Request for Class Certification

The backdrop against which this Court evaluates the instant motion includes the prior conditional certification and court-approved notice of FLSA claims by mutual consent and stipulation of the parties. There are broad commonalities between federal

and state treatment of labor law actions, with the key differences in certification being the time span (three years for "willful" FLSA claims versus six for NYLL claims) and the default scope of the class (opt-in for FLSA claimants and opt-out for NYLL claimants).  The substance of the FLSA claims already certified overlap entirely with two of the three claims for which plaintiffs seek class treatment here — the required allotment of tips to allegedly ineligible managers and to allegedly ineligible non-service employees.

The record presented to us on this motion adequately establishes the requisite Rule 23 commonality and predominance for these tip allotment claims.  It is undisputed that Fresco required servers to share tips with Messrs. Drill and Vosilla.  Defendants merely challenge, but to no avail, the characterization of those individuals as managers.  The New York Court of Appeals recently clarified that an employee becomes tip ineligible under NYLL whenever he or she exercises "meaningful or significant authority or control over subordinates," which "might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules."  Barenboim v. Starbucks Corp., 21 N.Y.3d 460, 473 (2013).  The Barenboim standard – one of "[m]eaningful authority, not final authority" (id.) – thus

requires even less than the analogous federal requirement under
Carter v. Dutchess Community Coll., 735 F.2d 8, 12 (2d Cir.
1984), which entails not mere input or participation, but rather
the power outright to hire, fire, supervise, determine payment,
create work schedules, and the like.   In light of this standard,
plaintiffs have presented sufficient evidence that Messrs. Drill
and Vosilla's constituted tip-ineligible managers, including but
not limited to evidence of their involvement in hiring, firing,
disciplining and training, as well as their official designation
as managers in corporate materials distributed to plaintiffs.
Pls. Mem. at 5-7; Weiner Decl. Ex. E at 2.   Defendants' argument
that Messrs. Drill and Vosilla were permitted to share tips for
shifts in which they provided customer service is contrary to
case law establishing that, under NYLL, the "practice of forced
sharing of tips with management is . . . an illegal practice,
regardless whether or not the members of management were engaged
in restaurant services that could be the subject of tipping."
Chung v. New Silver Palace Rest., Inc., 246 F.Supp.2d 220, 229
(S.D.N.Y. 2002); see also Paguay v Buona Fortuna, Inc., No. 11
Civ. 6266 (LTS), 2013 WL 3941088, at *3 (S.D.N.Y. July 31,
2013).

Plaintiffs' claim regarding tip-sharing with expediters and
stockers similarly meets the requirements for Rule 23
certification.   Defendants raised legitimate questions regarding

whether expediters and stockers always perform tip-ineligible duties, or whether the nature of their duties differ from shift-to-shift, which would render the inquiry incapable of class-wide determination.  Defs. Opp. at 11-15.  Ultimately, however, the balance weighs in favor of plaintiffs, whose evidence – including the sworn admission of defendant Scotto that expediters and stockers spend the majority of their daily shifts on tip-ineligible tasks – this Court finds more compelling. Scotto Dep., Weiner Decl. Ex. B, at 145-46.

Plaintiffs' third claim on this motion for non-payment of "spread of hours" compensation is an alleged violation of state law and thus not part of the previous FLSA certification. Defendants do not challenge the applicability to Fresco of NYLL's spread of hours provision.  Tr. at 4.  Thus, if plaintiffs are correct, this claim is dependent on Fresco's corporate policy regarding payment of spread of hours compensation, in that determination thereof will resolve the question of defendants' liability as against all plaintiffs owed spread of hours compensation.  In deposition testimony, defendant Scotto apparently admitted that Fresco did not, for some period of time, pay spread of hours compensation.  Pls. Mem. at 11; Pls. Reply Mem. at 4, Scotto Dep., Weiner Decl. Ex. B, at 112.  Defendants did not refute this contention in opposition papers, but instead argued plaintiffs' failure to

present adequate evidence in support of this claim. Defs. Opp. at 22-24. Subsequently at oral argument, however, defendants seemed to concede the nonpayment of spread of hours compensation, with respect to a certain time frame preceding some as-yet undisclosed policy change that occurred during the class period. Tr. at 10-11. The policy-driven nature of this claim is therefore also amenable to class-based determination pursuant to the requirements of Rule 23.

Accordingly, on all three claims, we find that plaintiffs have carried their burden to prove Rule 23 commonality and predominance. The Supreme Court's decision in Comcast presents no barrier to this holding, for, once liability is determined, any resulting damages would be amenable to class-wide determination, notwithstanding the "feasibility-related issue [of] the potential need for manual input" of certain limited information. In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d at 130.

The only remaining dispute regards opt-in plaintiff's Marco Barrera's adequacy as a Rule 23(a)(4) class representative. As defendants have raised reasonable concerns regarding potential conflicts between Mr. Barrera and others in the proposed class, we do not certify him as class representative. See Defs. Opp. at 18-19. Defendants do not challenge the adequacy of any of the three potential alternative representatives identified by

plaintiffs, and this Court finds that Mr. Megason, Mr. Rodriguez, and Ms. Zadoff constitute adequate class representatives. Tr. at 39; Pls. Reply Mem. at 10. Defendants also do not contest the form of the proposed notice or the service of plaintiffs' counsel Joseph & Kirschenbaum LLP as class counsel, both of which this Court endorses. Tr. at 38-39. Plaintiffs also seek from defendants a computer-readable list of names, mailing addresses, telephone numbers, email addresses, social security numbers, dates of employment and job titles for prospective class members from February 2006 to the present. Pls. Mem. at 22-23. This request is granted insofar as plaintiffs seek names, contact information and dates of employment and denied insofar as plaintiffs seek social security numbers and job titles for class members.

We are mindful of the contradictions raised in the Salinas case, brought by Fresco expediters and stockers. The Salinas plaintiffs present allegations regarding their work duties and hours that differ from the evidence advanced thus far in the case sub judice and also, curiously, from the evidence the very same class of employees presented in the Gillian case before Judge Rakoff. We candidly recognize that these accounts are inconsistent and that future discovery will determine the operative facts. In that context, this Court remains aware of its authority – and indeed its duty – to reconsider this

21

certification as the record further develops.   With that reservation, we hereby certify the class pursuant to Rule 23.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion is granted insofar as this Court certifies the proposed class pursuant to Rule 23, appoints plaintiffs' counsel as class counsel, and authorizes the mailing of the proposed notice to class members. The Court also orders defendants to produce to plaintiffs a list of employees' names, contact information and dates of employment, but denies plaintiffs' request for job titles and social security numbers.   This Memorandum and Order resolves Docket No. 51.

Dated:   New York, New York
         January *16* , 2014

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorneys for Plaintiffs**

D. Maimon Kirschenbaum, Esq.
Matthew Kadushin, Esq.
Charles E. Joseph, Esq.
Michael D. Palmer, Esq.
Douglas Weiner, Esq.
Joseph & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, NY 10279

**Attorneys for Defendants**

Craig R. Benson, Esq.
George Pauta, Esq.
Naveen Kabir, Esq.
Littler Mendelson, P.C.
900 Third Avenue, 8th Floor
New York, NY 10022